842 F.2d 1291
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Reita G. MINTZ, Administratrix of the Estate of Curtis Lee
Mintz, Plaintiff- Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 87-3032.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 5, 1987.
Decided March 7, 1988.
 
 Donna Keene Holt (Gilreath & Associates; I.S. Leevy Johnson; Johnson, Toal & Battiste, P.A., on brief), for appellant.
 Glen E. Craig, Assistant United States Attorney (Vinton D. Lide, United States Attorney, on brief), for appellee.
 Before Sprouse and Chapman, Circuit Judges, and Terrence William Boyle, United States District Judge for the Eastern Distirct of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 In this case, plaintiff, the administratrix of her deceased husband's estate, brings an action against the United States under the Federal Tort Claims Act.
 
 
 2
 On July 17, 1982, Curtis Lee Mintz suffered a head injury. He was a veteran eligible for VA medical care. His wife brought him to Dorn Veterans Hospital in Columbia, S.C. for emergency treatment. Rather than transferring him to a nearby hospital in Columbia for immediate neurological care, VA staff officials sent Mr. Mintz to the Veterans Hospital in Charleston, S.C., where he died on July 20, 1982. Plaintiff claims that the delay in treatment was negligence and that this proximately caused the wrongful death of her husband.
 
 I.
 
 3
 At the time of his death, Mr. Mintz lived with his wife and two children at Route 4, Box 1504, Orangeburg, South Carolina. Following his death, the plaintiff applied for and was appointed as administratrix of her husband's estate. Letters of administration were issued on June 10, 1983, by the Probate Court for Orangeburg County, South Carolina. The plaintiff then filed a timely administrative claim with the Veterans Administration and, after its denial, timely filed suit in United States District Court pursuant to the Federal Tort Claims Act.
 
 
 4
 During a discovery deposition of the plaintiff, she testified that although her mailing address was an Orangeburg, South Carolina address, her family home, where the decedent resided at the time of his death, is physically located across the county line in Calhoun County and not in Orangeburg County.
 
 
 5
 After hearing this, the government moved to dismiss the case pursuant to Rule 12(b)(1), F.R.Civ.P., for lack of subject matter jurisdiction. The government's motion rests on the theory that plaintiff's qualification as administratrix is defective and that this defect deprives plaintiff of the requisite status to be a duly qualified personal representative suitable to make the claim under the Tort Claims Act. A proper claim is prerequisite to jurisdiction over the United States which has waived its sovereign immunity only in clearly defined circumstances. South Carolina law provides that the probate court in the county of last residence of a decedent is the proper venue for the administration of a decedent's estate.
 
 
 6
 The district court agreed with the government and allowed the motion, dismissing the case for lack of subject matter jurisdiction.
 
 
 7
 The plaintiff appeals and we reverse.
 
 II.
 
 8
 Plaintiff's action is pursuant to 28 U.S.C. Sec. 1346(b) and the Federal Torts Claims Act, 28 U.S.C. Sec. 2671, et seq. Federal substantive law will control our decision. A claimant must present a written claim to the appropriate governmental agency within two years after the claim accrues. 28 U.S.C. Sec. 2401(b). The applicable federal regulation requires that:
 
 
 9
 A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable state law. 28 C.F.R. 14.3.
 
 
 10
 So, in determining whether this requirement has been satisfied as a matter of federal law, we are directed to state law for the relevant rules and procedures of qualification.
 
 
 11
 We are not applying state law as the substantive law of our decision as we would in diversity jurisdiction; rather, we are applying a federal law that calls upon us to look to state law for its content.
 
 
 12
 Four South Carolina statutes enunciate the requirements for probate in South Carolina. First, under South Carolina Code Sec. 14-23-1150, the probate judge in each county is granted jurisdiction:
 
 
 13
 in all matters testamentary and of administration, including jurisdiction in such matters to declare rights, status and other legal relationships whether or not further relief is or could be claimed.
 
 
 14
 Second, South Carolina Code Sec. 14-23-250 grants exclusive jurisdiction to the probate court once that court "takes cognizance" of the estate. This section states:
 
 
 15
 When any probate court shall first take cognizance of the settlement of the estate of a deceased person, such court shall have jurisdiction of the disposition and settlement of all the personal estate of such deceased person to the exclusion of all other probate courts.
 
 
 16
 Third, according to South Carolina Code Sec. 21-15-10, the proper venue for probate of wills and for administration of estates is in the county in which the deceased was last an inhabitant. This section in relevant part declares:
 
 
 17
 The probate of the will and the granting of administration of the estate of any personal deceased shall belong to the judge of probate for the county in which such person was last an inhabitant.
 
 
 18
 Fourth, once a court assumes probate jurisdiction, South Carolina Code Sec. 14-23-260 precludes collateral attack of the probate court's jurisdiction stating:
 
 
 19
 Jurisdiction assumed by any probate court in any case so far as it depends on the place of residence or the location of the estate, shall not be contested in any suit or proceeding whatever, except in an appeal from the probate court in the original case or when the want of jurisdiction appears on the record.
 
 
 20
 In effect, this fourth code section concerning probate specifies that if an estate is open and probated in an inappropriate county because of a mistake as to the decedent's place of last residence, the appointment is still recognized as valid under state law.
 
 
 21
 Our decision here is consistent with the decisions of other courts that have been called upon to treat this issue.
 
 
 22
 In Pringle v. U.S., 419 F.Supp. 289 (D.S.C.1976), the father of a deceased filed a federal tort claim without first qualifying as personal representative of the decedent's estate. The court, in applying federal law, looked to South Carolina law to determine whether the father had properly qualified as personal representative. Because he had not and therefore had no standing to make a claim, the claim failed on the running of the limitations period. Here, under the same analysis, it is apparent that the plaintiff has qualified under South Carolina law as her deceased husband's personal representative. This is true even though the qualification is subject to attack for improper venue if challenged in the Orangeburg County Probate Court.
 
 
 23
 In Kiley v. Lubelsky, 315 F.Supp. 1025 (D.S.C.1970), the court had before it a diversity action in which the plaintiff had failed to qualify under South Carolina law as administrator of her deceased child's estate before bringing the action. Plaintiff had qualified in Virginia but had neglected to take this step in South Carolina, a prerequisite to maintaining suit under South Carolina law. The court dismissed the action because it appeared on the face of the proceeding that the plaintiff had not qualified as an administratrix under South Carolina law. Although the court there was applying South Carolina law under Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938), its reasoning is consistent with our reasoning here applying federal law. The court pointed out the following at page 1028:
 
 
 24
 If a probate court had acted, defendants could not question the validity of the proceedings except as to a jurisdictional defect appearing on the face thereof.
 
 
 25
 Here, the district court went beyond the appropriate scope of its inquiry and undertook an examination of the administratrix's qualifications when it was apparent from the record that she had been duly qualified by a probate court of competent jurisdiction in South Carolina. This matter is left to the exclusive jurisdiction of the state probate court and the entire inquiry should have been avoided by the district court.
 
 
 26
 Our ruling here does not conflict with our holding in Phoenix Bridge v. Castleberry, 131 F. 175 (1904). That case was decided under the court's diversity jurisdiction prior to Erie, supra. Consequently, the court was not constrained to apply state rules but could undertake a separate analysis under federal law. In that case the wife and father of a decedent each obtained letters of administration from separate county probate courts. The court ruled that the probate court first issuing letters to the father took cognizance of the case and that therefore the father, who was the plaintiff, was properly before the court with his claim. There is nothing in the Phoenix Bridge case that is inconsistent with our ruling here. The government would have us read Phoenix Bridge in such a way that the court would be invited to disregard state law and impose its own analysis on the qualifications of the administratrix contrary to the procedures set out in state law. This is against the clear rule set for us as a matter of federal law when we are directed by the regulations and statute to examine the administrator's qualifications under state law.
 
 
 27
 In South Carolina National Bank of Charleston v. May, 211 S.C. 290, 292; 44 S.E.2d 836, 838 (1947), the court stated that "where the jurisdictional defect does not affirmatively appear on the face of the record, the proceedings in the probate court are not void, but merely voidable, and cannot be collaterally attacked or questioned except in a direct proceeding brought for that purpose."
 
 
 28
 The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this ruling.
 
 
 29
 REVERSED AND REMANDED.